599 P.2d 768

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, an Illinois Corporation, Appellee,**

v.

**Terrance Lee HERRON, Appellant.**

**No. 14297.**

Supreme Court of Arizona,
In Division.

July 9, 1979.

Rehearing Denied Sept. 6, 1979.

Toci, Musgrove, Murphy & Beck by Michael R. Murphy, Prescott, for appellee.

William B. Revis, Phoenix, for appellant.

HAYS, Justice.

This is an appeal from a partial summary judgment granted by the Superior Court to State Farm, appellee, limiting appellant, Terrance Herron, to a $15,000 recovery under the uninsured motorist provisions of his father's policy. Appellant took a timely appeal and we granted the petition to transfer the case to this court under the Arizona Rules of Civil Appellate Procedure, rule 19(a).

Appellant, his brother and his father, all residents of the same household, had separate policies on their respective vehicles with State Farm. Under the father's and brother's policies, there was bodily injury liability coverage of $100,000/300,000 and uninsured motorist coverage of $15,000/30,-000. Appellant's policy contained identical liability coverage but $50,000/100,000 worth of uninsured motorist coverage.

While appellant was a passenger in his father's truck, his brother's negligent driving resulted in a wreck which left appellant seriously and permanently injured. Appellant sued his brother and obtained a confession of judgment for $150,000 in exchange for a covenant not to execute on any of the brother's personal assets but to satisfy the judgment out of any available proceeds from insurance.

Appellant made demand on State Farm, which in turn denied coverage under all

three policies and brought suit for declaratory judgment. Prior to trial all parties agreed that there was no bodily injury liability coverage available under any of the three policies due to clauses excluding intrafamily liability. The only issue raised in the trial court was the extent of coverage under the uninsured motorist provisions of the policies.

The trial court granted partial summary judgment in favor of State Farm, finding no genuine issue of fact. Appellant was awarded $15,000 under the uninsured motorist provisions of his father's policy since the trial court determined that appellant was an "insured" thereunder and that the truck was an "owned motor vehicle," *i. e.*, the particular vehicle described in the declarations of the father's policy. The court further determined that appellant was precluded from recovery under his own policy or his brother's policy because, under the language of exclusion (b),[1] common to all three policies, the vehicle in question was owned by a resident of the same household and was not an "owned motor vehicle" either under appellant's policy or that of his brother.

Appellant urges us to hold that he is entitled to the full $50,000 under the uninsured motorist provisions of his own policy because exclusion (b) under that section is void as against public policy. In the alternative, appellant argues that such an exclusion is inapplicable to the case at bar, where all family members pay premiums on separate policies and each vehicle has uninsured motorist coverage, or, that he is at least entitled to have the excess clause of the "other insurance" provision of his policy enforced and thereby receive an additional $35,000.

We need not discuss the interpretation or validity of exclusion (b) because other provisions of appellant's policy make it clear that he is entitled to recover an additional $35,000.

Initially we examine the pertinent portions of the uninsured motorist coverage of appellant's policy, which is designated as coverage U:

### COVERAGE U

To pay all sums which the "insured" or his legal representative shall be legally entitled to recover as damages from the owner or operator of an "uninsured motor vehicle" because of bodily injury sustained by the "insured," caused by accident and arising out of the ownership . . . of such "uninsured motor vehicle."

An "uninsured motor vehicle" is defined as follows:

A land motor vehicle with respect to the ownership . . . of which there is in at least the amounts specified by the financial responsibility law of the state in which the described motor vehicle is principally garaged, *no bodily injury liability bond or insurance policy applicable at the time of the accident with respect to any "person" legally responsible for the use of such vehicle* . . . . (Emphasis added.)

The policy also contains an "other insurance" clause:

*Under coverage U with respect to "bodily injury" to an "insured" while "occupying" a motor vehicle not owned by a named insured under this coverage, the insurance shall apply only as excess insurance over any other similar insurance available to such occupant, and this insurance shall then apply only in the amount by which the applicable limit of liability of this coverage exceeds the sum of the applicable limits of liability of all such other insurance.* (Emphasis added.)

It is clear from the language of the "other insurance" section that coverage is provided thereunder even though the insured is

---

1. Exclusion (b) states that the coverage is not applicable to: "[B]odily injury" to an "insured" while occupying . . . a land motor vehicle owned by the named insured or any "resident" of the same household, if such vehicle is not an

"owned motor vehicle." The truck that appellant was occupying at the time of the accident was an "owned motor vehicle" only under the father's policy.

not occupying an "owned motor vehicle," i. e., the vehicle described in the policy declarations. Consequently, the fact that appellant was in his father's truck when the accident occurred does not preclude recovery under this section.

■ We agree with appellant's reasoning that the father's vehicle should be considered an "uninsured motor vehicle." It must be remembered that appellant could not reach bodily injury liability coverage under either his father's or brother's policies because of the clauses excluding liability among residents of the same household. The purpose of the Uninsured Motorist Statute is to provide for those situations in which negligent parties have no liability coverage under which injured parties may recover.[2] *Transamerica Insurance Co. v. McKee*, 27 Ariz.App. 158, 551 P.2d 1324 (1976).

We considered the difference between theoretical coverage and actual coverage in *Porter v. Empire Fire & Marine Insurance Co.*, 106 Ariz. 274, 475 P.2d 258, *modified on other grounds*, 106 Ariz. 345, 476 P.2d 155 (1970). In that case the plaintiff proved damages in the amount of $10,000 but received only $2,500 from the insurer of the negligent party because there were four other victims. Plaintiff's insurer denied excess coverage under the uninsured motorist provision of plaintiff's policy alleging that because the tort-feasor had $10,000 in liability coverage, the vehicle in question was not "uninsured." We made the following observations:

> These proceeds were also available to the other four victims . . . at the time of the accident. Therefore Empire reasons that Fitch [defendant] is removed from the category of "uninsured" as regards Porter's uninsured motorist coverage even though his eventual reimbursement amounted to only $2,500 of his total damages of $10,000. *This is nothing more than a game of semantics, which underlines the difference between theoretical—or paper coverage—available at the time of the accident and the actual coverage upon which the insured may rely.*

> . . . . .

> Although on paper $10,000 was available to Porter, if he received in actuality only $1, he would find that the protection upon which he relied, and for which he paid premiums, disintegrates in the face of a flimsy, unrealistic excuse. As Allstate Insurance Company conceded in the Fusco case, supra, the insured would be in a much better position had the tort-feasor been totally uninsured. Were this so, Porter would have been able to recover the full amount of damages under his own uninsured motorist coverage rather than the fraction which he received from Fitch's insurance. . . .

> We agree with the principle that the person who avails himself of the protection afforded by uninsured motorist coverage should be permitted to recover as if the tort-feasor had the minimum amount of liability insurance. . . . This is so whether the sum is recoverable *under the insured's policy alone or in combination with those funds actually receivable from the tort-feasor's liability coverage.* (Emphasis added.) *Id.* at 278–79, 475 P.2d at 262–63.

We see no reason to abandon this sound principle in the instant case. If the vehicle in *Porter, supra*, was held to be "uninsured" where part of the proceeds from a liability policy were actually available, *a fortiori*, where no liability coverage is in fact available, as here, the vehicle in question must be considered "uninsured" for purposes of effectuating legislative intent under the Uninsured Motorist Statute.

---

2. A.R.S. § 20–259.01(A) states in part:

[N]o automobile liability or motor vehicle liability policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person . . . shall be delivered or issued for delivery in this state . . . unless coverage is provided therein . . . for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury . . . resulting therefrom.

Finally, appellee argues that the law of Arizona does not allow "stacking" of uninsured motorist coverages and that appellant may not collect an additional $35,000 under the provisions of his own policy because this would constitute "stacking." Appellee relies on *Transportation Insurance Co. v. Wade*, 106 Ariz. 269, 475 P.2d 253 (1970), *Allstate Insurance Co. v. Pesqueria*, 19 Ariz. App. 528, 508 P.2d 1172 (1973), and *McCarthy v. Preferred Risk Mutual Insurance Co.*, 454 F.2d 393 (9th Cir. 1972). In *Wade* the executor of decedent's estate collected the full $10,000 uninsured motorist coverage as *primary* coverage because decedent was riding in his own automobile at the time of the accident. The executor then attempted to recover the full $10,000 under a policy carried by decedent's brother. This court held that since the full amount had been paid under primary coverage on decedent's car, the estate was entitled to nothing more because the brother's coverage was also limited to $10,000 and contained an "other insurance" clause.

*Wade* does not stand for the proposition that recovery under an uninsured motorist provision is *limited* to the *minimum* established by the Uninsured Motorist Statute. This court merely pointed out that the decedent's estate had recovered as much as if the tort-feasor had carried the minimum liability under the Financial Responsibility Act. It is nowhere suggested that if one has purchased more than the minimum amount under the Uninsured Motorist Statute, he is barred from collecting a greater sum. On the contrary, we said:

> In the instant case, *Wade's decedent bought insurance giving him this minimum, mandatory coverage, but he bought no more and he received the full measure of such coverage.*
>
> .    .    .    .    .
>
> Here, had the offending motorist carried insurance in accord with the Financial Responsibility Act, Wade would have recovered the same amount—$10,000—as he did here. The public policy as expressed in the statute has been satisfied and any *"excess-escape clauses" applying*

*to superfluous amounts of coverage fall in the area of contract law between the insuring parties .    .    . .* (Emphasis added.) *Id.* 106 Ariz. at 272–73, 475 P.2d at 256–57.

We recognized the elementary principle of contract law that if one wishes to buy more coverage, he may do so and the extent of that coverage will depend on the terms of the contract.

*Allstate Insurance Co. v. Pesqueria, supra*, is easily distinguishable from the case at bar. There, plaintiff collected $10,000 from the defendant's liability insurer and then sued his own insurer for the $10,000 maximum under his uninsured motorist coverage. The Court of Appeals held that since there was an applicable liability policy available, plaintiff could not recover an *identical amount* under uninsured motorist provisions of his own policy. The court nowhere intimated that if plaintiff had bought more uninsured motorist coverage, he could not have collected the excess under an "other insurance" provision.

We find *McCarthy v. Preferred Mutual Risk, supra*, inapposite. That case dealt with a plaintiff who had two policies with identical uninsured motorist coverages of $10,000 maximum. Each policy contained an "other insurance" clause but plaintiff attempted to collect the full $10,000 under each policy. The federal court correctly concluded that plaintiff could recover only $10,000, half from each insurer, because of a $10,000 maximum on each policy and the "other insurance" clauses.

■ The case at bar does not involve "stacking." Appellant has never contended that he is entitled to the full benefits of both his father's policy and his own. He merely seeks the excess amount of uninsured motorist coverage under his own policy, which contains a clear "other insurance" clause with a maximum of $50,000.

We hold that, due to the bar against intrafamily liability, there was no applicable liability policy in effect as to the vehicle involved in the accident, and that it was an "uninsured motor vehicle." Appellant is

entitled to an additional $35,000 under the "other insurance" clause of his own policy. The judgment of the trial court is affirmed as to coverage under the father's policy and reversed as to coverage under appellant's policy.

HOLOHAN and GORDON, JJ., concur.